UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Yeferson G.C., | Case No. 25-cv-4814 (MJD/DJF) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| David Easterwood, et al., | |
| Respondents. | |

This matter is before the Court for a Report and Recommendation on Petitioner Yeferson G.C.'s second petition for a writ of habeas corpus ("Petition") (ECF No. 1) and Motion for a Temporary Restraining Order ("TRO Motion") (ECF No. 2) seeking either his release from detention or a bond hearing pursuant to 8 U.S.C. § 1226(a). Petitioner filed his first habeas petition on November 13, 2025, *Yeferson G.C. v. Olson, et al.*, 25-cv-04325-MJD-LIB (D. Minn.) ("*Yeferson I*"). District Judge Michael J. Davis, the presiding judge both in that case and this one, filed an order on November 21, 2025 directing Respondents to provide Petitioner with a bond redetermination hearing. *Yeferson I* (ECF No. 17). In response to that order, an immigration judge ("IJ") provided Petitioner with a "hearing" and issued an order on December 8, 2025, in which he summarily denied release, without applying the factors applicable to discretionary bond, on the ground that he lacked jurisdiction to consider the issue. *Yeferson I* (ECF No. 18 at 2). The IJ further stated that, if a higher court were to find that he has jurisdiction to reconsider Petitioner's request for bond, he would grant the request and order bond in the amount of $5,000. (*Id.*) At the parties' joint request, Judge Davis then dismissed *Yeferson I* without prejudice, with permission for Petitioner to file a new habeas petition challenging the IJ's December 8, 2025 decision.

1

Petitioner did so, and his new petition challenging that decision is now ripe for adjudication. For the reasons given below, the Court recommends that Respondents be ordered to release Petitioner immediately, without imposing bond or conditions other than any conditions on which he previously was paroled.

## BACKGROUND

There is much ongoing debate in the national dialogue about how to combat illegal immigration and address noncitizens who have committed criminal offenses. This case involves neither of those things. Petitioner is not accused of committing any crimes and he has carefully and respectfully complied with all applicable immigration laws. Petitioner fled persecution in Venezuela under the Maduro regime and traveled through Mexico to seek asylum in the United States. (ECF No. 1 ¶ 16.) From there he scheduled an appointment to meet with U.S. Customs and Border Patrol ("CBP") and then properly presented himself at the border for inspection on the scheduled appointment date, October 26, 2024. (*Id.*) Upon inspection, officials issued Petitioner a Notice to Appear, which charged him as an "arriving alien" who was not in possession of a visa or other valid entry document and ordered him to appear for a hearing before the Executive Office for Immigration Review ("EOIR") on September 9, 2025. (*Id.*) Despite this charge, officials also granted Petitioner parole and a work permit, which expressly authorized him to remain in the United States until October 25, 2025. (ECF No. 12 at 3.)

Petitioner submitted his formal application for asylum around April 9, 2025 (ECF No. 1 ¶ 17), committed no crimes or civil immigration infractions, and dutifully appeared for his hearing on September 9, 2025 (ECF No. 1 ¶ 18). At that hearing, counsel for the Department of Homeland Security ("DHS") improperly moved to dismiss Petitioner's case[1] and the presiding IJ granted the

---

[1] Respondents now acknowledge they made a mistake in moving to dismiss Petitioner's immigration case at the September 9 hearing. (*See* ECF No. 12 at 6 n.2.) Because Petitioner

2

motion, effectively terminating his asylum application without affording him any opportunity to present it. (*Id.*) As Petitioner was leaving the courtroom, Immigrations and Customs Enforcement ("ICE") officials immediately arrested and detained him, notwithstanding the fact that at that time his parole did not expire for over a month.[2] Despite substantial opportunities for briefing in this case and *Yeferson I*, Respondents have neither produced a warrant for Petitioner's arrest and detention nor even hinted that one ever existed. (*See, e.g., Yeferson I*, ECF No. 10, attaching Respondents' exhibits.) As of the date of this Report and Recommendation, close to four-and-a-half months have elapsed since September 9, 2025, and Petitioner remains in detention. (ECF No. 3 at 2.)

## ANALYSIS

**I.      Respondents Detained Petitioner Pursuant to 8 U.S.C. § 1226(a).**

Petitioner argues, and Respondents agree, that Respondents arrested Petitioner on September 9, 2025 and are detaining him pursuant to 8 U.S.C. § 1226(a). (*See* ECF No. 3 at 11, Petitioner's Brief, citing *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018), for the proposition that Petitioner "is properly within the United States, where the INA 'authorizes detention of certain aliens *already in the country* … under §§ 1226(a) and (c).'"; ECF No. 12 at 12, Respondents' Brief, *citing Jennings*, 583 U.S. at 288, for the proposition that, "Section 1226 applies to this case. Section 1226 'generally governs the process of arresting and detaining … aliens pending their

---

appealed the dismissal to the Bureau of Immigration Appeals ("BIA"), upon recognizing their mistake Respondents filed a motion with the BIA to remand Petitioner's immigration case. (*Id.*) The BIA has not granted that motion, however, and as a result, Petitioner's asylum application remains in limbo. (ECF No. 1 ¶ 19.)

[2] Respondents' suggestion (*see* ECF No. 12 at 25) that Petitioner is somehow responsible for letting his parole lapse is ludicrous—by the time it expired they had already detained him.

removal.")  There is thus no dispute that Section 1226(a) applies to Petitioner's detention, and the Court bases its analysis on that statute.

## II. Section 1226(a) Mandates a Bond Hearing Based on the IJ's *Discretion*.

Section 1226(a) provides, in relevant part, that:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. … [P]ending such decision, the Attorney General
     (1) may continue to detain the arrested alien; and
     (2) may release the alien on
          (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
          (B) conditional parole …."

This language plainly dictates that the decision whether to grant or deny release on bond is *discretionary*:  DHS[3] "may continue to detain" or "may release" with bond or other conditions.

But the IJ in this case did not determine whether to grant or deny Petitioner's request for bond based on an exercise of his discretion.  (*See* ECF No. 1-11.)  Indeed, the IJ made it clear that if he believed he had jurisdiction, he would have exercised his discretion to release Petitioner.  (*See id.* at 3 n.2, finding Petitioner "does not appear to be [a] significant flight risk" and "has no criminal history or other factors which suggest [he] is a danger to the community.")  Instead, the IJ denied bond solely because he concluded he *lacked discretion* to consider Petitioner's bond redetermination request.  (*Id.* at 3.)  In reaching that conclusion, the IJ found that 8 C.F.R. § 1003.19(h)(2)(i)(B) "provides a separate and distinct category of bond ineligibility which divests the [Immigration] Court of jurisdiction." (*Id.* at 3 n.1.)  8 C.F.R. § 1003.19(h)(2)(i)(B) provides, in relevant part, that an immigration judge may not redetermine conditions of custody imposed

---

[3] Although Section 1226(a) states that bond must be determined by "the Attorney General," courts now construe the statute's reference to the Attorney General as referring to the Secretary of the Department of Homeland Security because this language predates the Department of Homeland Security and ICE.  *See Silva v. United States*, 866 F.3d 938, 940 n.2 (8th Cir. 2017).

4

with respect to "[a]rriving aliens in removal proceedings, including aliens paroled after arrival." The IJ's decision thus deprived Petitioner of a determination on the merits of his bond eligibility, and the "bond redetermination hearing" Petitioner purportedly received equates to no bond hearing at all. *See, e.g., Fuentes v. Olson,* No. 25-cv-4456 (LMP/ECW), 2025 WL 3524455 (D. Minn. Dec. 9, 2025) (bond hearing in which IJ found a lack of jurisdiction to consider petitioner's claim deprived petitioner of his right to a hearing on discretionary bond).

The IJ's decision is flawed in two respects. First, it ignores Respondents' contention that 8 U.S.C. § 1226 applies to Petitioner's detention. Pursuant to *Jennings*, 583 U.S. 281 at 287, and Respondents themselves (*see* ECF No. 12 at 10), the detention of "arriving aliens" falls under 8 U.S.C. § 1225; not Section 1226. Therefore, if as Respondents state, Petitioner was detained pursuant to Section 1226, he *cannot* be properly deemed an "arriving alien" under 8 C.F.R. § 1003.19(h)(2)(i)(B). Second, the regulation cited in support of the IJ's decision cannot preempt the mandates of the statute that indisputably applies. To the extent that the regulation purports to divest the IJ of discretion that Section 1226 plainly gives him, the regulation must give way. It is blackletter law that Congress, not the Executive Branch, has the power to make the laws, and this Court need not extend deference to an agency determination that conflicts with a statute. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412-13 (2024).

### III.   Respondents Did Not Comply with the Warrant Requirement.

Finally, there is no evidence in the record to suggest that ICE procured a warrant from DHS for Petitioner's arrest. Section 1226 states that a person may be arrested and detained pursuant to its provisions *only* upon issuance of a warrant. 8 U.S.C. § 1226(a). Therefore, Petitioner's *initial* detention as well as his *current* detention is unlawful. Because the conditions for arrest and

detention under Section 1226 have not been satisfied, the Court recommends that Petitioner be released immediately without bond under the same conditions on which he was previously paroled.

## IV. Exhaustion of Remedies Would be Futile.

Respondents urge the Court to deny Petitioner's motion on grounds that they moved to remand his appeal to the BIA and withdraw their dismissal motion, so that Petitioner's asylum claim may now be fully adjudicated in the Immigration Court. (*See e.g.,* ECF No. 12 at 15, "[T]his Court should deny the TRO motion to allow the remand to occur, the removal/asylum proceedings to proceed, and to allow the Immigration Court to make a decision on any custody redetermination request.") But this argument misses the point. The question of bond, which is properly before this Court on habeas review, is separate and apart from the question of removal, over which the Court agrees it lacks jurisdiction.[4] An order for Petitioner's release would in no way impede Respondents from adjudicating his asylum request.

Moreover, the Court rejects Respondent's contention that the petition should be denied because Petitioner failed to exhaust his administrative remedies by failing to appeal the IJ's order. (*See* ECF No. 12 at 17.) As Respondents acknowledge, "there is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention in federal court." *Id.* (cleaned up). Moreover, requiring administrative exhaustion would likely be futile in light of the BIA's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and the BIA's decision to classify all undocumented immigrants in Petitioner's circumstances as "arriving aliens." Given that Petitioner has already been denied bond twice in the Immigration Court based on lack of jurisdiction (*see* ECF No. 1 at ¶ 3) and spent over four

---

[4] None of the jurisdiction-stripping provisions of 8 U.S.C. § 1252 apply to the question of whether Petitioner is entitled to discretionary detention under § 1226(a). *See, e.g., Lauro M. v. Bondi*, No. 26-cv-134 (SRN/DJF), 2026 WL 115022, at *2 n.1 (D. Minn. Jan. 15, 2026).

6

months longer in detention than is lawful, prolonging his detention by requiring him to go back to the Immigration Court for yet another bond redetermination hearing would be unwarranted.

## CONCLUSION

For the foregoing reasons, the Court concludes that Respondents violated the Administrative Procedure Act and the requirements of 8 U.S.C. § 1226(a) by: arresting and detaining Petitioner without a warrant on September 9, 2025; depriving him of his right to a bond hearing on December 8, 2025 based on discretionary bond considerations; and continuing to detain him. The Court recommends the Petition be granted on these grounds and further recommends Petitioners request for costs and fees under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, be granted. Finally, because the Court recommends that the Petition (ECF No. 1) be granted, Petitioner's Motion for a Temporary Restraining Order (ECF No. 2) may be denied as moot.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Petitioner Yeferson G.C.'s Petition for a Writ of Habeas Corpus (ECF No. 1) be **GRANTED**;

2. Respondents be ordered to release Petitioner immediately on the same conditions on which he was previously paroled;

3. Respondents be ordered to reimburse Petitioner his reasonable costs and fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

4. Petitioner's Motion for a Temporary Restraining Order (ECF No. 2) be **DENIED** as moot.

Dated: January 21, 2026                    *s/ Dulce J. Foster*
                                           Dulce J. Foster
                                           United States Magistrate Judge

## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).